## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH M. NIGRO, | : | Civil No. 1:19-CV-02000 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA HIGHER | : | |
| EDUCATION ASSISTANCE | : | |
| AGENCY, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

This case arises from alleged improprieties in connection with the servicing of federal student loan debt. Plaintiff Keith M. Nigro ("Nigro") alleges that the servicer of his student loans, Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA"), is liable to him for unjust enrichment; unfair and deceptive trade practices in violation of the Consumer Financial Protection Act ("CFPA") and Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); and violation of his constitutional right to due process. The case is presently before the court on PHEAA's motion to dismiss. For the reasons that follow, the motion is granted. Nigro's unjust enrichment, CFPA, and due process clams are dismissed with prejudice, and his UTPCPL claim is dismissed without prejudice.

## STATUTORY BACKGROUND

Under the Higher Education Act of 1968, Pub. L. No. 89-329, 79 Stat. 1219 (codified as amended at 20 U.S.C. §§ 1001–1161aa-1) [hereinafter "HEA" or "the act"], the United States Department of Education ("the Department") has the power to issue federal loans to qualified student borrowers. *See* 20 U.S.C. §§ 1078, 1078-2, 1078-3, 1078-8, 1087a. Although such loans are issued by the Department, the HEA requires the Department to "award contracts for origination, servicing, and collection" of the loans "to the extent practicable." *Id.* § 1087f(a)(1). Once the Department has entered into a contract with a lender, the Department may suspend or terminate the lender's participation in the loan program if the lender has not complied with applicable statutes and regulations. 34 C.F.R. §§ 682.705–682.706.

The Public Service Loan Forgiveness Program ("PSLF") was created as part of the HEA to provide loan forgiveness to individuals working in qualified public service jobs. *See* 20 U.S.C. § 1087e(m)(1). Under the PSLF, the Department is directed to forgive all principal and interest due on a federal direct loan if the borrower (a) has made 120 qualified monthly payments on the loan; (b) has worked in a qualified public service job during the time in which those 120 payments were made; and (c) continues to work in a qualified public service job at the time of the loan forgiveness. *Id.*

2

## BACKGROUND AND PROCEDURAL HISTORY

This case was first filed as a petition for review with the Commonwealth
Court of Pennsylvania on October 16, 2019, pursuant to that court's original
jurisdiction under 42 Pa.C.S. § 761(a).  (Doc. 1-2.)  PHEAA removed the case to
this district on November 21, 2019, pursuant to the federal officer removal statute,
28 U.S.C. § 1442.  (Doc. 1.)  PHEAA filed an answer on November 27, 2019, after
which Nigro filed an amended complaint on December 17, 2019.  (Docs. 2, 8.)

According to the allegations in the amended complaint, Nigro is a resident of
Cumberland County, Pennsylvania who has, since 2007, been employed in public
service positions sufficient to qualify him for loan forgiveness under the PSLF.
(Doc. 8 ¶ 2.) PHEAA is a "quasi-governmental entity" located in Harrisburg,
Pennsylvania that serves as a contractor of the Department to service federal
student loans.  (*Id.* ¶¶ 3, 5.)  PHEAA services many of those federal loans through
its "alter ego," FedLoan Servicing ("FedLoan").  (*Id.* ¶ 7.)

In seeking relief before the Commonwealth Court, Nigro alleged, among
other things, that PHEAA wrongfully initiated administrative forbearances[1] when
servicing his loans between March 2012 and December 2012.  (*Id.* ¶ 11.)  During

---

[1] A forbearance is a period of administrative suspension of a loan "when no loan payment is
permitted and interest accumulated in that period is capitalized to increase principal."  (Doc. 8 ¶
8.)

these forbearances, Nigro "was not only prevented from making timely payments, but was also prevented later from making up retrospectively payments to cover forced interruption of payments." (*Id.*)

In response to Nigro's filing before the Commonwealth Court, PHEAA asserted that it had not serviced Nigro's student loans prior to March 12, 2018 and demanded that Nigro withdraw his case before the Commonwealth Court on that basis. (*Id.* ¶ 13.) According to the amended complaint, however, the assertion that PHEAA had not serviced Nigro's loans prior to March 12, 2018 was factually inaccurate, as proven by statements that PHEAA had previously made to Nigro. (*Id.* ¶ 17.) The amended complaint asserts that contrary to PHEAA's contention, it had serviced Nigro's loans from February 10, 2010 to March 12, 2012, and accordingly was servicing Nigro's loans during the period when several of the administrative forbearances allegedly occurred. (*Id.* ¶ 23.)

The amended complaint alleges that at all times prior to February 10, 2010, Nigro's loans had been serviced by Affiliated Computer Services ("ACS"), which was an affiliate of the Xerox Corporation. (*Id.* ¶ 24.) PHEAA then serviced Nigro's loans from February 10, 2010 to March 12, 2012, at which point the loans were transferred back to ACS. (*Id.* ¶ 28.) The loans remained with ACS until July 4, 2013, when they were transferred to a company called Nelnet. (*Id.*) Nelnet

continued to service the loans until March 2018, at which point it transferred them back to PHEAA.  (*Id.* ¶ 29.)

The amended complaint alleges that PHEAA committed a series of wrongs during the period in which it was allegedly servicing Nigro's loans.  According to the amended complaint, Nigro made a payment of $7,500 to PHEAA on December 13, 2010, which was purportedly allocated towards payment of interest.  (*Id.* ¶ 31.) Despite that allocation, however, there was no documentation indicating that the $7,500 was actually applied to the interest on Nigro's loans.  (*Id.* ¶¶ 33–34.)

The amended complaint alleges that PHEAA wrongfully increased the principal owed on Nigro's loans by $12,667.24 during the period spanning 2010 to 2012.  (*Id.* ¶ 47.)  This increase was due to a series of "administrative events and intrusions" by PHEAA "consisting of 11 documented instances of administrative capitalization of interest into larger principal; 10 administrative loan consolidations; and 8 administrative conversions."  (*Id.* ¶ 48.)

Nigro's loans were then subjected to twenty additional month-long forbearances between March 2012 and early 2019, "which shut the payment process down, subtracted a month of qualified public service, and triggered capitalization of interest so as to raise the principal" of Nigro's loans.  (*Id.* ¶ 52.) The majority of these forbearances were initiated not by Nigro's actions but rather by administrative actions of the loan servicer.  (*Id.* ¶ 53.)

5

The amended complaint alleges that there were at least four payments made and received between 2012 and 2019 that were never properly credited towards Nigro's loans. (*Id.* ¶ 55.) Specifically, the amended complaint alleges that on May 6, 2014, Nigro made a payment of $86.90, which was double the amount owed, but that the payment was not credited as an eligible payment for purposes of Nigro's loan forgiveness. (*Id.* ¶ 56.) Payments made on May 18, 2015, January 6, 2017, and March 13, 2017, were similarly not credited as eligible payments under Nigro's loans. (*Id.* ¶¶ 57–59.) The amount of those payments were, respectively, $165.42, $177.33, and $120.00. (*Id.*) Similarly, the amended complaint alleges that on May 16, 2017, Nigro submitted a payment of $116.44 to cover the months of April 2017 and May 2017, and that the payment was treated as an eligible payment for purposes of May 2017 but not for the purposes of April 2017. (*Id.* ¶ 60.)

The alleged misapplication of funds continued into 2019, when PHEAA deemed two payments ineligible for debt relief purposes on the grounds that Nigro had purportedly failed to submit proper certification that he was working in a certified public service position. (*Id.* ¶ 62.) The amended complaint alleges that every forbearance led PHEAA to extend the term of Nigro's loans and extend the term in which he was required to work in public service. (*Id.* ¶ 63.)

As of November 2019, PHEAA had increased the amount of Nigro's monthly payment from $109.22 to $244.00 based on its conclusion that he had recently entered into an income-driven repayment plan. (*Id.* ¶¶ 70–71.) That conclusion, however, was erroneous, because Nigro had always been in an income-driven repayment plan and had not changed his status at any point leading up to the November 2019 increase. (*Id.*)

The amended complaint further alleges that the parties dispute the date on which Nigro's eligible public service began. PHEAA allegedly asserts that Nigro's eligible public service began in March 2012, while Nigro asserts that his eligible public service began in 2007. (*Id.* ¶ 74.)

In addition to the misapplied payments, the amended complaint alleges that PHEAA and the other servicers of his loan have erroneously listed some of his loan accounts under the misspelled name "Keith Nitro." (*Id.* ¶ 76.) The first such accounting error occurred in 2012 and was promptly corrected, but Nigro discovered another similar accounting error shortly before the amended complaint was filed, when he was "not allowed to proceed except as Keith Nitro" in recertifying information for his loans. (*Id.* ¶¶ 77–78.)

Although PHEAA did not service Nigro's loans during all relevant times, the amended complaint alleges that PHEAA acknowledged "full authority and responsibility" to equitably adjust the loans even for periods in which it was not

7

the loan servicer when it recast two forbearances that occurred in 2015 and 2017 as one-day forbearances and restored two months of loan forgiveness time to Nigro's loans.  (*Id.* ¶¶ 54, 81.)

The amended complaint raises three causes of action.  In Count I, Nigro raises a cause of action for unjust enrichment.  (*Id.* ¶¶ 97–107.)  In Count II, Nigro raises a cause of action for unfair and deceptive trade practices in violation of the CFPA and the UTPCPL.  (*Id.* ¶¶ 108–18.)  In Count III, Nigro raises a cause of action under 42 U.S.C. § 1983 for violation of his right to due process under the United States Constitution.  (*Id.* ¶¶ 119–29.)

PHEAA moved to dismiss the amended complaint on January 7, 2020, and filed a brief in support of its motion the next day.  (Docs. 12–13.)  PHEAA's primary arguments are that the complaint should be dismissed under the doctrine of derivative sovereign immunity and that the complaint should be dismissed for lack of subject matter jurisdiction because Nigro does not have standing to bring his claim until he has completed ten years of eligible loan payments.  (Doc. 13 at 17–22.)  PHEAA additionally argues that (1) Nigro's state law claims should be dismissed as preempted by federal law; (2) the amended complaint fails to state an unjust enrichment claim upon which relief may be granted; (3) Nigro fails to state a claim under the UTPCPL; (4) Nigro does not have standing to bring a CFPA claim; (5) PHEAA is not a proper defendant under 42 U.S.C. § 1983; and (6) the

complaint should be dismissed because Nigro failed to join the Department, which is an indispensable party under Federal Rule of Civil Procedure 19.  (*Id.* at 22–32.)

Nigro filed a brief opposing the motion to dismiss on January 21, 2020, and PHEAA filed a reply brief on February 4, 2020.  (Docs. 18–19.)  With briefing on the motion having concluded, it is now ripe for the court's disposition.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1442(a)(1), which allows a federal officer "or any person acting under that officer" to remove a case to federal court.  28 U.S.C. § 1442(a)(1); *see also Willingham v. Morgan*, 395 U.S. 402, 407 (1969) (holding that federal court has jurisdiction over a case properly removed under § 1442(a)(1) "regardless of whether the suit could originally have been brought in a federal court").

For a federal contractor to remove a case under § 1442(a)(1), the contractor must establish that "(1) it is a 'person' within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct 'acting under' a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office." *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998) (citing *Mesa v. California*, 489 U.S. 121, 129 (1989)).  Unlike the general removal statute, § 1442 must be "broadly construed" in favor of removal.  *In re Commonwealth's*

*Motion to Appoint Counsel Against or Directed to Defender Assoc. of Phila.*, 790

F.3d 457, 466–67 (3d Cir. 2015) (quoting *Sun Buick, Inc. v. Saab Cars USA, Inc.*,

26 F.3d 1259, 1262 (3d Cir. 1994)).

Here, PHEAA satisfies the elements necessary to remove a case under §

1442.  First, as a corporate entity, PHEAA qualifies as a "person" under the statute.

*Commonwealth's Motion to Appoint Counsel*, 790 F.3d at 467–68.  Second,

Nigro's claims against PHEAA are based on actions that PHEAA took while

acting under a federal office, because, according to the amended complaint,

PHEAA serviced Nigro's student loans pursuant to its contract with the

Department.  (*See* Doc. 8 ¶ 5.)  Third, PHEAA raises a colorable federal defense.

To satisfy this element, a federal defense does not have to be successful, it must

only be colorable.  *Willingham*, 395 U.S. at 406–07.  A federal defense is

colorable, "if it is 'legitimate and can reasonably be asserted, given the facts

presented and the current law.'"  *Golden v. N.J. Inst. of Tech.*, 934 F.3d 302, 310

(3d Cir. 2019) (quoting *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 815 (3d

Cir. 2016)).  Here, although the court ultimately finds that PHEAA is not entitled

to derivative sovereign immunity, that doctrine still qualifies as a colorable federal

defense because it is legitimate and can reasonably be asserted in this case.  *Id.*

Finally, the requisite causal connection is established because all of Nigro's claims

arise from actions that PHEAA took in its role as a federal contractor.

Accordingly, the court has removal jurisdiction under § 1442.  PHEAA's

contention that the court lacks subject matter jurisdiction because Nigro does not

have standing to bring his claims will be discussed in more detail below.

**STANDARD OF REVIEW UNDER RULE 12(b)(6)**

In order to survive a motion to dismiss for failure to state a claim upon

which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is

plausible on its face "when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of

liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford*

*Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To

determine whether a complaint survives a motion to dismiss, a court identifies "the

elements a plaintiff must plead to state a claim for relief," disregards the

allegations "that are no more than conclusions and thus not entitled to the

assumption of truth," and determines whether the remaining factual allegations

"plausibly give rise to an entitlement to relief."  *Bistrian v. Levi*, 696 F.3d 352, 365

(3d Cir. 2012).

When considering a motion to dismiss, a district court "may not make findings of fact and, insofar as there is a factual dispute, the court may not resolve it." *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015) (citing *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011)).  Any reasonable inferences must be drawn in favor of the party opposing dismissal. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 783 n.1 (3d Cir. 2016) (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).

### STANDARD OF REVIEW UNDER RULE 12(b)(1)

Whether a plaintiff has standing "is a question of subject matter jurisdiction." *Petroleos Mexicanos Refinacion v. M/T King A (Ex-Tbilisi)*, 377 F.3d 329, 334 (3d Cir. 2004).  Thus, motions to dismiss for lack of standing are analyzed as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *Long v. SEPTA*, 903 F.3d 312, 320 (3d Cir. 2018).

When considering a motion to dismiss under Rule 12(b)(1), a district court must determine whether the motion presents a facial or factual challenge to the court's subject matter jurisdiction. *Id.* (citing *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014)).  A facial attack "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court." *Id.* (quoting *Constitution Party*, 757 F.3d at 357).  A factual attack, on the

other hand, "contests the truth of the jurisdictional allegations." *Id.* (quoting

*Constitution Party*, 757 F.3d at 358).

A district court applies a different standard of review depending on whether

a motion to dismiss presents a facial or factual attack to the court's subject matter

jurisdiction. *Id.* (citing *Constitution Party*, 757 F.3d at 357). "In reviewing a

facial attack, 'the court must only consider the allegations of the complaint and

documents referenced therein and attached thereto, in the light most favorable to

the plaintiff.'" *Constitution Party*, 757 F.3d at 357 (quoting *In re Schering Plough*

*Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)).

Thus, when reviewing a facial attack, the court applies "the same standard of

review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.,*

construing the alleged facts in favor of the nonmoving party." *Id.* (citing *Schering*

*Plough*, 678 F.3d at 243). When considering a factual attack, on the other hand,

the court "may weigh and 'consider evidence outside the pleadings,'" *id.* (quoting

*Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)), and is not

obligated to treat the plaintiff's allegations as true. *Long*, 903 F.3d at 320.

A factual attack on subject matter jurisdiction may only be brought after the

moving defendant has answered the plaintiff's complaint. *Id.* Thus, any motion to

dismiss under Rule 12(b)(1) that is filed before the defendant has answered the

complaint is "by definition, a facial attack."  *Id.* (quoting *Constitution Party*, 757
F.3d at 358).

**DISCUSSION**

### A. PHEAA Is Not Entitled to Derivative Sovereign Immunity

PHEAA's first argument is that Nigro's amended complaint should be
dismissed under the doctrine of derivative sovereign immunity.  (Doc. 13 at 17–
21.)  The derivative sovereign immunity doctrine was first announced in *Yearsley
v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940), in which the Supreme Court held
that a federal contractor was entitled to sovereign immunity where the federal
government validly conferred authority on the federal contractor and the federal
contractor was simply performing its duties under the contract.  *Id.* at 19–23.

PHEAA asserts that this case should be dismissed under the principles of
derivative sovereign immunity announced in *Yearsley*.  (Doc. 13 at 17–21.)  Nigro
disagrees, arguing that PHEAA's reliance on *Yearsley* is misplaced in light of
*Campbell-Ewald Co. v. Gomez*, 577 U.S. __, 136 S. Ct. 663, 672 (2016).  (Doc. 18
at 14–17.)

In *Campbell-Ewald*, a federal contractor asserted that it was entitled to
derivative sovereign immunity under *Yearsley*.  *Campbell-Ewald*, 136 S. Ct. at
673.  The Court acknowledged that federal contractors "obtain certain immunity in
connection with work which they do pursuant to their contractual undertakings

14

with the United States," but held that such immunity "is not absolute." *Id.* at 672. The Court clarified that when a federal contractor allegedly "violates both federal law and the Government's explicit instruction, . . . no 'derivative immunity' shields the contractor from suit by persons adversely affected by the violation." *Id.*

The court agrees with Nigro that derivative sovereign immunity does not apply. As noted above, the amended complaint alleges that PHEAA violated federal law and violated its contractual obligations as a servicer of Nigro's federal student loans. (Doc. 8.) Given those allegations, PHEAA is not entitled to derivative sovereign immunity. *See Campbell-Ewald*, 136 S. Ct. at 672; *see also New York ex rel. James v. PHEAA*, 19-CV-09155, 2020 WL 2097640, at *5–8 (S.D.N.Y. May 1, 2020) (denying federal loan servicer's motion to dismiss for derivative sovereign immunity).

**B. Questions of Fact Preclude Dismissal for Lack of Standing**

The court will next address PHEAA's standing argument. Because PHEAA has not yet answered Nigro's complaint, the court will treat this as a facial attack on the court's subject matter jurisdiction. *See Long*, 903 F.3d at 320 (noting that a motion to dismiss under Rule 12(b)(1) that is filed before an answer is "by definition, a facial attack").

Because Article III of the United States Constitution only allows federal courts to decide cases and controversies, a plaintiff must have standing to bring a

claim in federal court.  *Dep't of Comm. v. New York*, 588 U.S. __, 139 S. Ct. 2551, 2565 (2019).  To establish standing, a plaintiff must show that he has "(1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision."  *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. __, 139 S. Ct. 1945, 1950 (2019) (citing *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)).  An injury is concrete and particularized if it "affects the plaintiff in a personal and individual way."  *Gill v. Whitford*, 585 U.S. __, 138 S. Ct. 1916, 1929 (2018) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  The plaintiff's injury "must be '*de facto*'; that is, it must actually exist."  *Spokeo, Inc. v. Robins*, 578 U.S. __, 136 S. Ct. 1540, 1548 (2016).

Here, PHEAA argues that Nigro does not have standing to bring his claims because his loans were consolidated in March 2012, meaning that he would not be eligible for loan forgiveness until at least 2022 and therefore has not suffered a concrete and particularized injury.  (Doc. 13 at 21.)  Nigro argues that this is incorrect because he has been engaged in qualified public service since 2007.  (Doc. 18 at 18.)  PHEAA responds that Nigro's March 2012 loan consolidation "reset the clock for purposes of loan forgiveness, meaning that he is more than two years away from completing his service for purposes of PSLF, even if he makes all future payments on time and without any forbearances."  (Doc. 19 at 9.)

16

PHEAA's standing argument fails because it requires the court to make factual determinations that it may not make at this stage of litigation.  Although the amended complaint acknowledges that a loan consolidation occurred on March 12, 2012, *see* Doc. 8 ¶ 46, the amended complaint alleges that the consolidation did not reset the clock on Nigro's eligibility for debt forgiveness.  (*Id.* ¶ 74.)  If that is true, which the court must assume at this stage, then Nigro could have been eligible for loan forgiveness as early as 2017, which would accordingly defeat PHEAA's standing argument.  Therefore, since resolution of PHEAA's standing argument requires the court to resolve the question of whether Nigro's 2012 consolidation reset the clock on his eligibility for debt forgiveness, the court will deny PHEAA's motion to dismiss for lack of standing without prejudice to PHEAA re-raising the argument at a later stage of litigation.[2]

---

[2] PHEAA argues in a footnote that its standing argument could also be characterized as a ripeness argument. (*See* Doc. 13 at 22 n.8.)  The court will not address this argument because it was raised only in a footnote.  *See, e.g.*, *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."); *Kitsock v. Baltimore Life Ins. Co.*, No. 3:12-CV-01728, 2014 WL 65302, at *8 n.3 (M.D. Pa. Jan. 8, 2014) ("An argument made only in a footnote is not worthy of credence (other than to be rejected by footnote.)" (quoting *Schmalz v. Sovereign Bancorp., Inc.*, 868 F. Supp. 2d 438, 457 n. 14 (E.D. Pa. 2012))).  Several other arguments that PHEAA raises only in footnotes are rejected for the same reason.  (*See* Doc. 13 at 18 n.7 (arguing that the derivative sovereign immunity argument can be analyzed under Rule 12(b)(6) in addition to Rule 12(b)(1)); *id.* at 25 n.9 (arguing that portions of Nigro's unjust enrichment claim are barred by the applicable statute of limitations); *id.* at 28 n.12 (arguing that damages for emotional distress are not recoverable under the UTPCPL); *id.* at 28 n.13 (arguing that portions of Nigro's UTPCPL claim are barred by the applicable statute of limitations).)  Although PHEAA developed its statute of limitations arguments in its reply brief, *see* Doc. 19 at 10, 14, those arguments are still rejected because they were not properly raised in PHEAA's

### C. Nigro's State Law Claims Are Not Preempted

PHEAA's next argument is that Nigro's state law claims should be dismissed because they are preempted by federal law.  (Doc. 15 at 22–24.)  Preemption of state law is based on the Supremacy Clause of the United States Constitution, which states that the laws of the United States are "the Supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. Art. VI, cl. 2.  Although they are not "rigidly distinct," three preemption doctrines have arisen from the Supremacy Clause: express preemption, field preemption, and conflict preemption.  *Va. Uranium, Inc. v. Warren*, 587 U.S. __, 139 S. Ct. 1894, 1901 (2019) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 n.6 (2000)).  The Third Circuit explains these preemption doctrines as follows:

> Express preemption applies where Congress, through a statute's express language, declares its intent to displace state law. [*Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985).]  Field preemption applies where "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* (internal quotation marks omitted). Conflict preemption nullifies state law inasmuch as it conflicts with federal law, either where compliance with both laws is impossible or where state law erects an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal quotation marks omitted).

---

supporting brief.  *See Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 328 F. Supp. 2d 522, 529 (M.D. Pa. 2004 ("It is improper for a party to present a new argument in [a] reply brief." (quoting *United States v. Medeiros*, 710 F. Supp. 106, 109 (M.D. Pa. 1989)).

*Farina v. Nokia, Inc.*, 625 F.3d 97, 115 (3d Cir. 2010).

Here, PHEAA argues that Nigro's state law claims should be dismissed under the doctrines of express preemption and conflict preemption. (Doc. 15 at 22–24.) Specifically, PHEAA argues that Nigro's state claims are expressly preempted by the HEA's preemption provision under 20 U.S.C. § 1098(g), which states that "[l]oans made, insured, or guaranteed pursuant to a program authorized by Title IV of the [HEA] shall not be subject to any disclosure requirements of any State law." 20 U.S.C. § 1098(g). PHEAA argues that the state law claims are also conflict preempted by the HEA because the HEA was meant to achieve uniformity in the regulation of student loans. (Doc. 15 at 23–24.)

At the time that PHEAA filed its motion to dismiss, there was no controlling case law on the issue of whether Nigro's state law claims were preempted by federal law. Since that time, however, the Third Circuit squarely addressed this issue in *Pennsylvania v. Navient Corp.*, 967 F.3d 273 (3d Cir. 2020). That decision controls the court's analysis here and compels the court to deny PHEAA's preemption argument.

In *Navient*, the court considered a civil enforcement action brought by Pennsylvania's Attorney General against a federal student loan servicer for alleged violations of state and federal law. *Id.* at 282. The servicer moved to dismiss,

arguing, among other things, that the Attorney General's state law claims were preempted by the HEA under both the express preemption and conflict preemption doctrines.  *Id.* at 283.  The district court denied the motion to dismiss, and the Third Circuit then considered the issue of preemption through a certified question from the district court.  *Id.*

The Third Circuit held that the HEA expressly preempts state law only to the extent that the state law sets disclosure requirements and does not preempt state law governing affirmative misconduct.  *Id.* at 287.  In reaching this holding, the Third Circuit expressly relied on the reasoning of the Eleventh Circuit in *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, 955 F.3d 908 (11th Cir. 2020), and the Seventh Circuit in *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639 (7th Cir. 2019).  *See Navient*, 967 F.3d at 290.

Relying on *Lawson-Ross*, the court acknowledged that § 1098g expressly preempts state law that sets "disclosure requirements" and that the term "disclosure requirements" is not defined in the HEA, but noted that the HEA identifies what disclosures are required under the statute in 20 U.S.C. § 1083.  *Id.* at 289 (quoting *Lawson-Ross*, 955 F.3d at 917).  "Viewed in its statutory context, then, the term 'disclosure requirements' refers to the Education Act's requirements that certain information be communicated to borrowers during the various stages of a loan, as laid out in § 1083 of the statute.  Thus, the domain § 1098g preempts is the type of

20

disclosures to borrowers that § 1083 requires." *Id.* (quoting *Lawson-Ross*, 955 F.3d at 917). The HEA therefore expressly preempts claims based on a failure to disclose—that is, claims in which a plaintiff alleges "that there was a duty to speak and [that] the duty was breached"—but does not preempt claims based on affirmative misrepresentations. *Id.* (quoting *Lawson-Ross*, 955 F.3d at 918).

The Third Circuit similarly concluded that the Attorney General's claims were not preempted under the conflict preemption doctrine. *Id.* at 293. The court again agreed with the reasoning of *Lawson-Ross* and *Nelson* that conflict preemption should not be inferred when a statute provides for express preemption of certain state laws. *Id.* Courts "need not infer congressional intent to pre-empt state laws by the Education Act. . . . When Congress has explicitly addressed preemption in a statute, an implication arises that it did not intend to preempt other areas of state law" through conflict preemption. *Id.*

The court acknowledged that the Ninth Circuit had reached a contrary conclusion in *Chae v. Sallie Mae*, 593 F.3d 936, 946–47 (9th Cir. 2010), where the court concluded that some state law was conflict preempted by the HEA because regulatory uniformity was a goal of the HEA. The *Navient* court rejected this argument, however, agreeing with *Lawson-Ross*, *Nelson*, and *College Loan Corp. v. Sallie Mae*, 396 F.3d 588, 597 (4th Cir. 2005) that uniformity was not a goal of the HEA. *Navient*, 967 F.3d at 293.

21

Accordingly, because the Attorney General in *Navient* brought claims against the servicer for affirmative misconduct, the court held that the claims were not preempted by the HEA. *Id.* at 295. Thus, to the extent that a plaintiff's claims are based on "affirmative misconduct" they are not preempted by the HEA. *Id.* at 291.

The Third Circuit's decision in *Navient* controls the court's analysis here. Nigro's claims are not based on a breach of a duty to disclose information, but rather on alleged affirmative misconduct by PHEAA. Specifically, the amended complaint alleges misapplication of Nigro's payments, improper increases in the amount of his principal, improper increases in the amount of his monthly payments, and improper forbearances. (*See, e.g.*, Doc. 8 ¶¶ 31–34, 42–48, 52, 55–60, 62–63, 67, 70, 73.) Accordingly, his claims are not preempted by the HEA, and the court will deny that portion of PHEAA's motion to dismiss.

### D. The Amended Complaint Does Not State an Unjust Enrichment Claim Upon Which Relief May Be Granted

To state a claim for unjust enrichment under Pennsylvania law, a plaintiff must allege (1) that the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under circumstances in which it would be inequitable to do so without

paying for the benefit. *Karden Constr. Servs., Inc. v. D'Amico*, 219 A.3d 619, 628 (Pa. Super. Ct. 2019).

Here, PHEAA argues that the amended complaint fails to state an unjust enrichment claim upon which relief can be granted because it does not allege that Nigro conferred a benefit on PHEAA or that PHEAA appreciated that benefit. (Doc. 13 at 24–25.)  Nigro disagrees, arguing that he conferred a benefit on PHEAA because PHEAA is paid fees and compensation by the Department in exchange for servicing Nigro's loans.  (Doc. 18 at 24–25.)

The court agrees with PHEAA that the amended complaint fails to state an unjust enrichment claim upon which relief may be granted.  The amended complaint does not allege that Nigro conferred any benefit on PHEAA.  Instead, the amended complaint's unjust enrichment claim is based on the fees that PHEAA receives for servicing Nigro's loans, *see* Doc. 8 ¶ 102, which, as Nigro admits, are paid by the Department and not Nigro.  (Doc. 18 at 24–25.)

A loan servicer's receipt of fees from the Department for servicing student loans is not sufficient to state an unjust enrichment claim upon which relief may be granted.  *See, e.g.*, *Hyland v. Navient Corp.*, No. 18-CV-09031, 2019 WL 2918238, at *14 (S.D.N.Y. July 8, 2019) (finding that plaintiff failed to state unjust enrichment claim where only benefit allegedly retained by defendant was servicing fees paid by the Department); *Olsen v. Nelnet, Inc.*, 392 F. Supp. 3d 1006, 1022–23

(D. Neb. 2019) (same).[3]  Thus, because Nigro's unjust enrichment claim is based

solely on PHEAA's receipt of fees from the Department, the court will dismiss the

unjust enrichment claim with prejudice for failure to state a claim upon which

relief can be granted.

### E. The Amended Complaint Does Not State a Claim Upon Which Relief May Be Granted Under the UTPCPL

PHEAA next argues that the amended complaint fails to state a claim under

the UTPCPL.  (Doc. 13 at 26–28.)  The UTPCPL allows a private cause of action

for unfair or deceptive practices. 73 Pa.C.S. §§ 201-2, 201-3.  Nigro's claim in this

case is brought under the statute's catch-all provision, 73 Pa.C.S. § 201-2(4)(xxi),

which prohibits "fraudulent or deceptive conduct which creates a likelihood of

confusion or misunderstanding."  To state a claim for relief under the UTPCPL's

catch-all provision, a plaintiff must allege "(1) a deceptive act that is likely to

deceive a consumer acting reasonably under similar circumstances; (2) justifiable

reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss."

*McDonough v. State Farm Fire & Cas. Co.*, 365 F. Supp. 3d 552, 562 (E.D. Pa.

---

[3] Although the unjust enrichment claims in *Hyland* and *Olsen* were not based on Pennsylvania law, the elements of unjust enrichment cited by the *Hyland* and *Olsen* courts are legally indistinguishable from the elements necessary to state a claim for unjust enrichment under Pennsylvania law.  In both cases, the plaintiff needed to allege (1) that the plaintiff conferred a benefit on defendant; (2) the defendant appreciated the benefit; and (3) the circumstances were such that it would be unjust for the defendant to retain the benefit.  *See Hyland*, 2019 WL 2918238, at *13; *Olsen*, 392 F. Supp. 3d at 1022.

2019) (quoting *Hall v. Equifax Info. Servs. LLC*, 204 F. Supp. 3d 807, 810 (E.D.

Pa. 2016)).

A plaintiff is not required to plead the elements of common law fraud to

plead a deceptive act under the UTPCPL's catch-all provision. *Fazio v. Guardian*

*Life Ins. Co. of Am.*, 62 A.3d 396, 407 (Pa. Super. Ct. 2012). Nevertheless, a

defendant still must have "knowledge of the falsity of [its] statements or the

misleading quality of [its] conduct" to be held liable under the UTPCPL. *Belmont*

*v. MB Inv. Partners, Inc.*, 708 F.3d 470, 498 (3d Cir. 2013) (citing *Wilson v.*

*Parisi*, 549 F. Supp. 2d 637, 666 (M.D. Pa. 2008)). Thus, a deceptive act under the

UTPCPL "is the act of intentionally giving a false impression or a tort arising from

a false representation made knowingly or recklessly with the intent that another

person should detrimentally rely on it." *Wilson*, 549 F. Supp. 2d at 666; *see also*

*Chiles v. Ameriquest Mortg. Co.*, 551 F. Supp. 2d 393, 399 (E.D. Pa. 2008)

(holding that an act is deceptive under the UTPCPL if it intentionally misleads "by

falsehood spoken or acted" and "has the capacity or tendency to deceive" (quoting

*Christopher v. First Mut. Corp.*, No. 05-CV-01149, 2006 WL 166566, at *4 (E.D.

Pa. Jan. 20, 2006))); *accord Corsale v. Sperian Energy Corp.*, 374 F. Supp. 3d 445,

459 (W.D. Pa. 2019). Courts must construe the UTPCPL liberally to effectuate the

statute's goal of protecting consumers from unfairness and deception. *Commonw.*

*ex rel. Creamer v. Monumental Props., Inc.*, 329 A.2d 812, 817 (Pa. 1974).

25

The amended complaint in this case fails to state a claim under the UTPCPL because it does not allege that PHEAA engaged in any deceptive act under the statute.  Although the amended complaint alleges that PHEAA and the other servicers[4] of Nigro's loans have not properly credited payments made on his loans, have improperly deemed payments as unqualified for purposes of debt forgiveness, have improperly increased the amount of principal due on his loans, have improperly instituted forbearances of his loans, have improperly increased the amount of money owed in each monthly payment, and have improperly extended the term in which he is required to work in public service, *see, e.g.*, Doc. 8 ¶¶ 31–34, 42–48, 52, 55–60, 62–63, 67, 70, 73, the amended complaint does not allege that PHEAA intentionally gave Nigro a false impression, knowingly made a false representation to Nigro, or recklessly made a false representation to Nigro.  *Wilson*, 549 F. Supp. 2d at 666.  The amended complaint therefore fails to state a claim under the UTPCPL's catch-all provision and Nigro's UTPCPL claim will be dismissed on that basis.  The court will, however, grant Nigro leave to amend this claim because amendment of the claim would be neither inequitable nor futile. *Houle v. Walmart Inc.*, __ F. Supp. 3d __, No. 3:19-CV-00514, 2020 WL 1491188, at *6 (citing *Phillips*, 515 F.3d at 225).

---

[4] The amended complaint alleges that PHEAA is responsible for the actions of the other loan servicers.  (*Id.* ¶¶ 54, 81.)

### F.  Nigro Does Not Have Standing Under the CFPA

PHEAA argues that Nigro's CFPA claim should be dismissed for lack of standing because the CFPA does not allow private causes of action.  (Doc. 13 at 28–29.)  Nigro concedes this argument in his brief in opposition.  (Doc. 18 at 30 n.7.)  Accordingly, because the CFPA does not allow private causes of action, *see* 12 U.S.C. § 5564(a); *McMillan v. Nationstar Mortg. Co.*, No. 20-CV-01321, 2020 WL 4201605, at *3 (E.D. Pa. July 22, 2020), the court will dismiss Nigro's CFPA claim with prejudice.

### G. Nigro's § 1983 Claim Is Dismissed for Lack of State Action

The court will next address PHEAA's argument for the dismissal of Nigro's claim under 42 U.S.C. § 1983.  PHEAA argues that the § 1983 claim must be dismissed because it is a state agency and therefore not a state actor subject to liability under § 1983.  (Doc. 13 at 29. (citing *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 854 (3d Cir. 2014)).)  Nigro responds by essentially raising an issue preclusion defense, arguing that prior court rulings in *United States ex rel. Oberg v. PHEAA*, 804 F.3d 646 (4th Cir. 2015), *PHEAA v. NC Owners, LLC*, 256 F. Supp. 3d 550 (M.D. Pa. 2017), and *Lang v. PHEAA*, 201 F. Supp. 3d 613 (M.D. Pa. 2016) require a ruling that PHEAA is a state actor. Both parties' arguments miss the mark.

Section 1983 provides in relevant part as follows:

27

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . . .

42 U.S.C. § 1983.

A claim under § 1983 requires "action taken under color of state, not federal law." *Davis v. Samuels*, 962 F.3d 105, 115 (3d Cir. 2020). Thus, where a defendant is alleged to be a federal actor or to have acted under color of federal law, a "1983 claim cannot stand." *Id.* That is precisely the case here. The amended complaint alleges that PHEAA was acting entirely under federal, not state law. (*See* Doc. 8 ¶¶ 4–6 (alleging that PHEAA "operates independently from the Commonwealth of Pennsylvania" and "serves as a contractor of the United States Department of Education" for purposes of servicing student loans).) Thus, Nigro's § 1983 claim "cannot stand." *Davis*, 962 F.3d at 115.

Furthermore, even if the court liberally construed the amended complaint as implicitly bringing a *Bivens* claim,[5] such a claim would still fail because PHEAA is a federal contractor, not a federal agent. As the Supreme Court has made clear,

---

[5] Under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), a plaintiff may bring a private action for damages against a federal agent for alleged violations of the plaintiff's constitutional rights under certain circumstances.

28

*Bivens* does not allow a private cause of action against a federal contractor.  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).  Accordingly, the court will dismiss Nigro's § 1983 claim with prejudice.

### H. The Department Is Not a Necessary Party Under Rule 19

Finally, the court will address PHEAA's argument that the amended complaint should be dismissed for Nigro's failure to name the Department as a defendant.  This argument is brought under Federal Rule of Civil Procedure 12(b)(7), which allows a party to move for dismissal of an action for failure to join a party.  Whether joinder of a party is required is in turn governed by Federal Rule of Civil Procedure 19.

A court reviewing a failure to join under Rule 19 conducts a two-part analysis.  *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007).  First, the court must determine whether joinder of the absent party is necessary under Rule 19(a)(1).  *Id.*  If the party should be joined but its joinder would defeat the court's jurisdiction, the court must move to the second part of the analysis, which requires a determination as to whether the party is indispensable under Rule 19(b).  *Id.*  If the absent party is both necessary under Rule 19(a)(1) and indispensable under Rule 19(b), the action must be dismissed.  *Id.* (citing *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993)).  Conversely, if the court finds that an absent party is not necessary under Rule

19(a), it need not decide whether the party is indispensable under Rule 19(b).  *Id.*

The party seeking dismissal "bears the burden of showing that a non-party is both

necessary and indispensable under Rule 19."  *Eaton v. XPO Logistics Worldwide*

*Inc.*, No. 1:19-CV-01518, 2020 WL 2847863, at *2 (M.D. Pa. June 2, 2020).

> A party is necessary under Rule 19(a)(1) if:
>
> **(A)** in [the party's] absence, the court cannot accord complete relief among existing parties; or
>
> **(B)** [the party] claims an interest relating to the subject of the action and is so situated that disposing of the action in the [party's] absence may:
>
> > **(i)** as a practical matter impair or impede the [party's] ability to protect the interest; or
> >
> > **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  Consistent with the language of the rule, courts treat

subsections (a)(1)(A) and (a)(1)(B) disjunctively: if either subsection is satisfied,

the absent party is necessary.  *Gen. Refractories*, 500 F.3d at 312 (citing *Koppers*

*Co., Inc. v. Aetna Cas. & Sur. Co.*, 158 F.3d 170, 175 (3d Cir. 1998)).

PHEAA argues that the Department is a necessary party because proceeding

without it would "impair the Department's ability to protect its interests with

respect to both PHEAA and Nigro's loans."  (Doc. 13 at 29–30.)  Additionally,

PHEAA argues that it will be subjected to a "substantial risk of incurring inconsistent obligations" if the Department is not joined. (*Id.* at 30.)

Nigro argues that the Department is not a necessary party because all of the alleged wrongs relate to the servicing of his loans, "and no federal law or regulation is itself being challenged." (Doc. 18 at 33.) Nigro asserts that PHEAA has the power to correct past servicing wrongs without any need for the Department's presence. (*Id.*) Nigro then argues that the court should apply the same analysis that the court applied in *Commonwealth v. PHEAA*, No. 1784CV02682, 2018 WL 1137520, at *10 (Mass. Super. Ct. Mar. 1, 2018), in which the Massachusetts Superior Court held that the Department was not an indispensable party in a case regarding the servicing of loans because it was "not inevitable that the Department will have an interest in whatever judgment may be entered." 2018 WL 1137520, at *10. PHEAA argues in turn that *Commonwealth* is inapposite because, unlike the plaintiffs in that case, Nigro seeks to have his loans forgiven as a remedy for his unjust enrichment and § 1983 claims. (Doc. 19 at 20.) Since the decision of whether to forgive Nigro's loans is left to the Department, PHEAA argues that the court would not be able to accord complete relief between the existing parties if the Department were not joined. (*Id.* at 20–21.)

The court finds that the Department is not a necessary party to this action under Rule 19(a)(1).  First, there is no indication that the court "cannot accord complete relief" in the absence of the Department.  Fed. R. Civ. P. 19(a)(1)(A).  Although PHEAA argues this is the case because Nigro seeks to have his loans forgiven, he only seeks such relief with respect to his unjust enrichment and § 1983 claims, *see* Doc. 8 ¶¶ 107, 118, 129, and neither one of those claims survives this opinion.

Second, there is no indication that the case proceeding without the Department would "impair or impede" the Department's ability to protect its interests.  Fed. R. Civ. P. 19(a)(1)(B)(i).  PHEAA advances two interests that the Department has that would purportedly be impaired if the case proceeded without the Department.  (Doc. 13 at 31.)  First, PHEAA asserts that the Department has "an actual property interest" in Nigro's loans.  (*Id.*)  Second, PHEAA asserts that "Nigro's pursuit of a judicial remedy is likely to impair the Department's ability to resolve this situation on its own terms, which it has plenary authority to do, and to administer the servicing of its loans in a consistent way across the country."  (*Id.*)

The court disagrees that continuance of this case without the Department would harm the Department's property interest in Nigro's loans. The relief that Nigro seeks in this case is that he be "credited with all months in which he made payments, or was improperly prevented from making payments, since 2007," and

that he be awarded damages from PHEAA for its improprieties in servicing his loans. (Doc. 8 ¶ 118.) The court does not see how the Department's interest would be harmed by a court order for PHEAA to correct its alleged improprieties in servicing Nigro's loans. Indeed, because the Department is tasked with administration of the PSLF, the Department's interests would, if anything, seem to be *advanced* by such an order. To hold otherwise would imply that the Department has an interest in its contractors committing malfeasance while servicing loans on its behalf, which is nonsensical.

Similarly, the court does not see how the case proceeding would harm the Department's interest in regulating student loans. To begin, there does not appear to be any support for the assertion that the Department has plenary authority to resolve the situation on its own. The only authority that PHEAA cites to support this proposition is 20 C.F.R. § 682.700, which plainly does not provide such support. *See* 20 C.F.R. § 682.700 (defining generally the purpose and scope of the Department's ability to limit, suspend, or terminate a lender's participation in direct loan programs). While the Department does have the power to suspend or terminate a lender's participation in the direct loan program, *see* 34 C.F.R. §§ 682.705–682.706, such power is not "plenary" and does not limit a court's ability to review the lender's actions. *Id.* Furthermore, while it may be true that the Department has an interest in consistent administration of student loans, the court

does not see how that interest would be harmed by a court order for PHEAA to correct its alleged improprieties, since, as noted above, such an order would seem to advance the Department's interest as the administrator of the PSLF.

Finally, although PHEAA asserts that it is "at risk of multiple or inconsistent obligations" if the Department is not joined, *see* Doc. 13 at 31, it does not specify what those inconsistent obligations would be.  PHEAA's argument in this regard provides only speculation as to the possibility of multiple or inconsistent obligations.  *See id.* ("To the extent that Nigro seeks monetary and equitable relief that is at odds with the Department's view of an appropriate resolution for this matter, PHEAA will face multiple or inconsistent legal obligations that could be inequitable or mutually impossible to satisfy.").  Such speculation is not sufficient to satisfy PHEAA's burden under Rule 12(b)(7).  Accordingly, the court concludes that the Department is not a necessary party under Rule 19(a)(1).  Having reached such a conclusion, the court need not determine whether the Department is indispensable under Rule 19(b).  *Gen. Refractories*, 500 F.3d at 312.

## CONCLUSION

For the foregoing reasons, PHEAA's motion to dismiss is granted. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: September 8, 2020